**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Harold Staten,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **No. 24-cv-01380-AB** |
| **City of Philadelphia and Detective James McNesby,** | : | |
| **Defendants.** | : | |

# ORDER

AND NOW, this __________ day of ______________, 2024, upon consideration of the Motion to Dismiss filed by Defendants, the City of Philadelphia and Detective James McNesby, it is **HEREBY ORDERED** that the Motion is **GRANTED**. It is **FURTHER ORDERED** that all of Plaintiff's underlying claims against Defendants are **DISMISSED WITH PREJUDICE**.

BY THE COURT:

______________________________
The Honorable Anita B. Brody
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Harold Staten,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**City of Philadelphia and Detective James McNesby,**<br><br>**Defendants.** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **No. 24-cv-01380-AB** |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT (ECF 13)**

Defendants City of Philadelphia and Detective James McNesby, by and through their undersigned counsel, respectfully move this Court to dismiss Plaintiff's Amended Complaint (ECF 13) pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of this Motion, Defendants incorporate the attached Memorandum of Law.

Dated: July 24, 2024

Respectfully submitted,

*/s/ Perry Wasserman*
Shneur Z. Nathan
Avi T. Kamionski
Perry Wasserman
Jami Galbraith
Nathan & Kamionski LLP
575 South Charles Street, Suite 402
Baltimore, Maryland 21201
(410) 846-0061
pwasserman@nklawllp.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Harold Staten,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **No. 24-cv-01380-AB** |
| **City of Philadelphia and Detective James McNesby,** | : | |
| **Defendants.** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (ECF 13)**

Defendants City of Philadelphia and Detective James McNesby ("Defendants"), by and through their undersigned counsel, hereby respectfully submit this Memorandum of Law in support of their Motion to Dismiss Plaintiff's Amended Complaint (ECF 13).

## INTRODUCTION

Plaintiff Harold Staten ("Plaintiff") initiated this civil rights action pursuant to 42 U.S.C. § 1983 against the City of Philadelphia (the "City") and former Philadelphia Police Detective James McNesby ("Det. McNesby"), alleging violations of his constitutional rights stemming from his prosecution and conviction for the 1984 murder of Charles Harris. After serving 37 years in prison, Plaintiff successfully challenged his conviction on grounds of newly discovered scientific evidence and developments in the field of fire investigation that occurred years after his conviction in 1986. Plaintiff was ultimately released from prison and now alleges that his arrest and prosecution were without probable cause. Plaintiff also makes vague and conclusory allegations of fabricated evidence, coercion, inducement, perjury, and suggestion, contending Det. McNesby "had knowledge of everything in the case file" or "was aware of the facts known" to "co-conspirators

and other investigators[.]" ECF 13 at ¶ 78. Yet, Plaintiff does not clearly allege Det. McNesby's personal involvement, nor does he name, describe, or otherwise identify in any manner these alleged co-conspirators or other investigators who violated his constitutional rights. Plaintiff also formulaically asserts that the City's widespread practice of performing unconstitutional homicide investigations was the moving force behind and proximately caused the violation of his constitutional rights. *Id.* at ¶ 79.

Despite Plaintiff's lengthy allegations, Plaintiff has failed to sufficiently establish that Det. McNesby committed any constitutional violation against him because, at the time of his arrest and prosecution, probable cause existed. Furthermore, Det. McNesby is entitled to qualified immunity. Similarly, Plaintiff has failed to establish that the City had a widespread pattern or practice of unconstitutional misconduct during homicide investigations or failed to train, supervise, or discipline its officers during the relevant time period. Additionally, Plaintiff has not put forth sufficient facts to establish a civil rights conspiracy claim. Consequently, and for the reasons set forth below, this Motion should be granted, and Plaintiff's Amended Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND[1]

On October 30, 1984, Charles Harris, his girlfriend Marian DeBose, Richard Williams, and one other individual were sleeping inside a rowhome located in the Glenwood neighborhood in North Philadelphia when a fire was started. ECF 13 at ¶¶ 19-20, 32. All four individuals fled to safety by jumping from second floor windows. *Id.* at ¶ 21. Mr. Harris, however, suffered severe

[1] The factual background is a summary and is taken exclusively from Plaintiff's Amended Complaint (ECF 13). It is accepted as true for the limited purpose of Defendants' Motion to Dismiss for failure to state a claim. *Cudjoe v. Dep't of Veterans' Affairs*, 426 F.3d 241, 244 (3d Cir. 2005); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Defendants do not concede that all allegations in the Amended Complaint are supported by a factual basis.

burns covering a significant portion of his upper torso, and he died of the injuries he sustained in the fire. *Id*. at ¶ 22.

As part of their investigation into the rowhome fire and the death of Mr. Harris, Philadelphia Police Department ("PPD") officers interviewed a 17-year-old witness (the "eyewitness") who lived across the street from the rowhome at the time of the fire. *Id*. at ¶ 35. According to Plaintiff's Amended Complaint, the eyewitness provided an initial statement to police denying that she saw Plaintiff around the time of the fire. *Id*. at ¶¶ 35-36. The eyewitness gave a subsequent statement to police, however, indicating she saw Plaintiff at the steps of the rowhome with a hose and a can, "starting the fire." *Id*. at ¶¶ 45-46. She said a man she knew to be Plaintiff was huddled at the front door, using a hose to put liquid through the mail slot of the home until he left," at which point the eyewitness saw smoke. *Id*. at ¶ 47.

The Amended Complaint provides that police also uncovered important motive evidence, which contributed to the establishment of probable cause in this case. Specifically, Plaintiff worked as a pest exterminator at the time of the arson and believed Robert Williams, a resident of the rowhome that was set on fire, had stolen his work property. *Id*. at ¶¶ 38-40. Plaintiff explicitly threatened to burn Mr. Williams' house down over these missing pest control products. *Id*. at ¶ 66. Notably, Mr. Williams, who was in the rowhome when the fire was set, suffered injuries as a result of the fire. *Id*.

Additionally, Plaintiff's Amended Complaint provides that Plaintiff "confessed" to committing his crimes to a civilian witness. *Id*. at ¶ 63, 66. This admission evidence was also included in the affidavit for probable cause. *Id*.

On March 20, 1986, Det. McNesby obtained an arrest warrant for Plaintiff based on an affidavit of probable cause he signed. ECF 13 at ¶ 31. In his Amended Complaint, Plaintiff alleges

that the affidavit was flawed because it did not include an alleged statement by Mr. Harris about his girlfriend being a potential suspect (*Id*. at ¶¶ 23, 25) or Plaintiff's "cooperation" with police (*Id*. at ¶¶ 37, 40-44).

In October 1986, Plaintiff elected to proceed by way of a bench trial in which he was represented by counsel. *Id*. at ¶ 50. At this trial, Plaintiff impeached the eyewitness's testimony. *Id*. at ¶ 49. He also provided alibi evidence. *Id*. at ¶ 53. After reviewing all evidence, on October 7, 1986, the trial judge convicted Plaintiff of second-degree murder, arson, and aggravated assault. According to Plaintiff's Amended Complaint, the trial court also held a post-trial hearing and heard testimony from a "new witness" that Plaintiff's counsel did not call at trial, and "numerous" other witnesses who testified that the eyewitness was lying. *Id*. at ¶ 52. Plaintiff also alleges the trial court heard testimony from "other witnesses" who "further support[ed] [Plaintiff's] alibi and to further refute the Commonwealth's motive evidence." *Id*. at ¶ 53. Despite this evidence, the trial court denied Plaintiff's post-trial motions, upheld his conviction, and sentenced him to life in prison. *Id*. at ¶¶ 55-56.

Decades after Plaintiff's conviction for murder and arson, Plaintiff alleges he obtained newly discovered evidence that undermines the evidence used to convict him. Specifically, Plaintiff hired a forensic fire investigator who opined that "modern forensic science standards would have led to an 'undetermined' cause of the fire." *Id*. at ¶¶ 70-73. As a result of his expert's opinions, in 2024, Plaintiff received a new trial, and the Philadelphia District Attorney's Office dismissed all charges against him. *Id*. at ¶¶ 5, 7, 75.

Plaintiff now brings this Section 1983 suit alleging three claims against Det. McNesby: malicious prosecution in violation of the Fourth Amendment ("Count I") (ECF 13 at ¶¶ 127-132); deprivation of liberty without due process and denial of a fair trial under the Fourteenth

Amendment ("Count II") (*Id.* at ¶¶ 133-137); and a state law claim for malicious prosecution ("Count V") (*Id.* at ¶¶ 147-139). Plaintiff also alleges a municipal liability claim ("Count III") against the City (*Id.* at ¶¶ 138-143) and a civil rights conspiracy ("Count IV") against Det. McNesby and "other City of Philadelphia employees" (*Id.* at ¶¶ 138-143). These claims should be dismissed as set forth in more detail below because there was undisputed probable cause; the claims of deprivation of liberty, *Monell* and conspiracy were improperly pled; and because Detective McNesby is entitled to qualified immunity.

**LEGAL STANDARD**

"To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009)). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)). The Court is "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).

Evaluating a motion to dismiss for failure to state a claim for relief involves a "three-step process." *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022) (citing

*Connelly v. Lane Const. Corp*., 809 F.3d 780, 787 (3d Cir. 2016)). "The first step in that process requires an articulation of the elements of the claim." *Id*. The second step involves "disregarding any 'formulaic recitation of the elements of a ... claim or other legal conclusion,'" *Id*. (quoting *Connelly*, 809 F.3d at 789), and allegations that are "so threadbare or speculative that they fail to cross the line between conclusory and the factual[.]" *Id*. at 328 (quoting *Connelly*, 809 F.3d at 790). As for the third step, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675, 679, 129 S.Ct. 1937).

## ARGUMENT

### I. The Existence of Probable Cause is an Absolute Bar to Plaintiff's Federal and State Malicious Prosecution Claims (Counts I and V)

A malicious prosecution claim under the Fourth Amendment requires a plaintiff to establish that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Halsey v. Pfeiffer*, 750 F.3d 273, 296-97 (3d Cir. 2014) (citations omitted). A malicious prosecution claim under Pennsylvania state law requires a plaintiff to plead all but suffering a deprivation of liberty. See *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000) (citation omitted). "Under prong three, a showing of probable cause is a complete defense to civil liability." *Rodgers v. Pennsylvania State Police*, No. 1:20-CV-2115, 2024 WL 1333365, at *11 (M.D. Pa. Mar. 28, 2024) (citing *Goodwin v. Conway*, 836 F.3d 321, 327 (3d. Cir. 2016).

### A. Det. McNesby Had Probable Cause to Prosecute Plaintiff for the Murder of Charles Harris.

Plaintiff's malicious prosecution claims (Counts I and V) fail because probable cause for Plaintiff's arrest and prosecution existed. Probable cause requires that "the facts and circumstances within the officer's knowledge [at the time of the arrest] would convince a reasonable person that an individual has committed an offense." *Rodgers,* 2024 WL 1333365 at *11 (citing *Orsatti v. N.J. State Police,* 71 F.3d 480, 483 (3d Cir. 1995)). To survive a motion to dismiss, Plaintiff must "affirmatively assert facts to show that the Officer Defendants did not have probable cause" rather than merely asserting that all the allegations presented against them "during the underlying criminal proceedings were false." *Lombardo v. Yost, et al.*, No. 24- cv-1383,2024 WL 2959302, at *7 (E.D. Pa. June 12, 2024) (citing *Santiago,* 2015 WL 1422627 at *4 (dismissing plaintiffs' malicious prosecution claim because plaintiffs failed to allege factual enhancements that officer defendants lacked probable cause and only alleged that the allegations against them in the underlying criminal proceedings were false)).

Here, the eyewitness who lived across the street from Mr. Harris's rowhome told investigators that she saw Plaintiff at the steps of the rowhouse with a hose and can "starting the fire," adding that she saw Plaintiff "using a hose to put liquid through the mail slot of the home[,]" and that she saw smoke after Plaintiff left the scene. ECF 13 at ¶¶ 45-47. Police also received evidence of motive, including a statement made by Plaintiff that he intended to burn down Mr. Williams' house, and information from a separate witness that Plaintiff confessed to him. *Id.* at ¶¶ 38-40, 63, 66. This evidence of Plaintiff's involvement is more than sufficient to establish probable cause, as this set of facts could lead a "reasonable person" to conclude that Plaintiff committed the arson and resulting murder of Mr. Harris.

Courts have stated that "police officers have no constitutional obligation to conduct any further investigation before making an arrest if they have received information from a reasonably credible victim or eyewitness sufficient to supply probable cause." *Woods v. City of Chicago*, 234 F.3d 979, 997 (7th Cir. 2000). "It is well settled that an officer can rely upon a statement by a punitive victim or eyewitness to establish probable cause unless the officer has reason to doubt the witness's veracity." *Washington v. Napolitano*, 29 F.4th 93, 110 (2d Cir.), cert. denied, 143 S. Ct. 485, 214 L. Ed. 2d 276 (2022). Here, probable cause is established by the testimony of the eyewitness's statements.

In fact, the existence of probable cause is further illustrated by Plaintiff's conviction following a bench trial in which the trial court judge—even after hearing "obviously contradictory evidence" from the boyfriend of the eyewitness—found there was sufficient evidence to convict Plaintiff of all charges beyond a reasonable doubt, a much higher standard than probable cause. *Id*. at ¶¶ 49-50. Further, Plaintiff's conviction was not reversed because a court found there was insufficient probable cause to prosecute him or because Plaintiff's admission was found to be coerced or false or because the eyewitness or any other witness recanted. Rather, Plaintiff's conviction was reversed on the *sole* basis that it appeared, under new standards of fire science, the cause of the fire should have been "undetermined." *Id.* at ¶¶ 70-73.

If Plaintiff's contention is a magistrate would not have found probable cause if certain information was included in the probable cause affidavit, the argument is unavailing. In *Wilson v. Russo*, 212 F.3d 781 (3rd Cir. 2000), the court examined the issue of whether information omitted from a warrant could give rise to a Section 1983 malicious prosecution claim. The court held that even if omissions were made with reckless disregard for the truth (an allegation Plaintiff has not made in his Amended Complaint), the omissions need be material. *Id*. at 789. "To determine the

materiality of the misstatements and omissions, we excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Id*. While Plaintiff alleges information was omitted from the probable cause affidavit in this case (ECF 13 at ¶¶ 23, 25-26, 29, 32, 34, 36, 37, 40-44, 46, 60-61, 68), the omissions detailed in Plaintiff's Amended Complaint ultimately do not alter the probable cause determination as probable cause was sufficiently established by the eyewitness account and the evidence of Plaintiff's motive, including his direct threat to burn down Mr. Williams' house, and Plaintiff's confession to a civilian witness.

Plaintiff also contends that Det. McNesby should have included certain exculpatory information in his affidavit. ECF 13 at ¶¶ 26, 34. This argument is also without merit as officers are not required to include exculpatory evidence in probable cause affidavits. In *Costino v. Anderson,* the court held, "[Failing] to disclose exculpatory evidence…differs from affirmatively falsifying evidence, committing perjury, or engaging in corrupt means to obtain an indictment." 786 F. App'x 344, 348 (3d Cir. 2019). Similarly, in *Rodgers v. Pennsylvania State Police,* the plaintiff argued that "probable cause was necessarily lacking due to the troopers' ignoring or mishandling potential exculpatory evidence…," yet the court found this does not equate to the officers fabricating evidence. No. 1:20-CV-2115, 2024 WL 1333365, at *12 (M.D. Pa. Mar. 28, 2024). Even in the context of presentment to a grand jury, a body tasked with making a probable cause determination, the *Rodgers* court found there is "no obligation to present exculpatory evidence—let alone *potentially* exculpatory evidence—to grand juries." *Id.* (citing *United States v. Williams*, 504 U.S. 36, 53 (1992). Thus, Plaintiff cannot simply state that the omission of exculpatory information in the probable cause affidavit undercuts the existence of probable cause to prosecute him. Probable cause existed based on the eyewitness's statement and the additional

evidence detailed above. As a result, because probable cause existed to prosecute Plaintiff, Det. McNesby cannot be held liable for malicious prosecution, and Plaintiff's malicious prosecution claims fail.

### B. Plaintiff Fails to Allege Det. McNesby Acted with Malice

Even if this Court could determine there was insufficient probable cause for the arrest and prosecution of Plaintiff, Plaintiff has not presented any alleged claims of "actual malice, let alone anything to suggest a course of conduct." *Rodgers v. Pennsylvania State Police*, No. 1:20-CV-2115, 2024 WL 1333365, at *12 (M.D. Pa. Mar. 28, 2024). In *Rodgers*, the court found that they didn't need to "delve into the details regarding any omissions or discrepancies of the investigation..." as a "mere failure to disclose or misstatement of fact…does not equate to acting with malice." *Id.* The court further stated that the "alleged errors and omissions fall well short of suggesting malice or rebutting the presumption of probable cause" and that the court should not "jump leaps and bounds to infer a nefarious motive in the absence of any such suggestion." *Id.* Here, Plaintiff alleges a malicious prosecution claim without alleging that the information he says was omitted from the probable cause affidavit was omitted with malice. In fact, Plaintiff's allegations do not show that such omissions amounted to anything more than carelessness. Further, there is no fact in the Amended Complaint that shows that Det. McNesby, or anyone else in PPD for that matter, was trying to intentionally mislead a court about Plaintiff's involvement in the arson.

In sum, probable cause existed to arrest and prosecute Plaintiff for the arson and murder of Harris. Plaintiff also has not shown that any omission of facts or exculpatory evidence would have changed that determination. Plaintiff has also not shown that Det. McNesby acted with malice as

is required to succeed on a malicious prosecution claim. Therefore, Plaintiff's claims for malicious prosecution (Counts I and V) against Det. McNesby should be dismissed.

**II. Det. McNesby is Entitled to Qualified Immunity.**

The doctrine of qualified immunity has long "protect[ed] government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Because qualified immunity results in "immunity from suit rather than a mere defense to liability," *Pearson*, 555 U.S. at 231, qualified immunity inquiries, "must be resolved at the earliest possible stage of the litigation[,]" *George v. Rehiel*, 738 F.3d 562, 571 (3d Cir. 2013) (quoting *Miller v. Clinton Cty.*, 544 F.3d 542, 547 (3d Cir. 2008)).

In determining whether qualified immunity applies, courts must engage in a two-prong inquiry: "'(1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the official's conduct.'" *Bland v. City of Newark*, 900 F.3d 77, 83 (3d Cir. 2018) (quoting *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016)).

Under the second prong, a right is clearly established if, "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Reedy v. Evanson*, 615 F.3d 197, 224 (3d Cir. 2010) (internal quotation marks omitted). This means that there is either "a closely analogous case that establishes that the Defendant's conduct was unconstitutional[,]" or "that the Defendant's conduct was so patently violative of the constitutional right that reasonable officials would know without guidance from a court." *Schneyder v. Smith*, 653 F.3d 313, 330 (3d Cir. 2011) (quoting *Est. of Escobedo v. Bender*, 600 F.3d 770, 780 (7th Cir. 2010)).

**A. Det. McNesby is Entitled to Qualified Immunity Because Fourteenth Amendment Malicious Prosecution and *Brady* Claims are Not Clearly Established.**

**1. The Fourteenth Amendment Malicious Prosecution Claim is Not Clearly Established.**

Det. McNesby is entitled to qualified immunity on Plaintiff's Fourteenth Amendment malicious prosecution claim because there was no clearly established procedural due process right against malicious prosecution under the Fourteenth Amendment in 1986, and there still is not. This District Court has made such a finding numerous times, and neither the United States Supreme Court nor the United States Court of Appeals for the Third Circuit has held that the Fourteenth Amendment confers this specific procedural due process right. *See,* e.g*., Ogrod v. City of Phila.*, 598 F. Supp. 3d 253, 266 (E.D. Pa. 2022) (holding that between 1992 and 1996 it was not clearly established that the Fourteenth Amendment provided for a procedural due process right against malicious prosecution); *Gilyard v. Dusak*, No. 16-2986, 2018 WL 2144183, at *5 (E.D. Pa. May 8, 2018) (concluding that "in 1998 (and today) our courts had not clearly established [that] a citizen had a Fourteenth Amendment procedural due process right to be free from malicious prosecution"); *Thorpe v. City of Philadelphia*, No. 19-5094, 2020 WL 5217396, at *16 (E.D. Pa. Sept. 1, 2020) (concluding that "a Fourteenth Amendment procedural due process right against malicious prosecution was not clearly established in 2008—and is still not clearly established for that matter"); *Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 380–82 (E.D. Pa. 2018) ("[t]he procedural due process right against malicious prosecution is not clearly established."); *Lewis v. City of Phila.*, No. 19-2847, 2020 WL 1683451, at *7-8 (E. D Pa. Apr. 6, 2020) (holding that defendant officers were entitled to qualified immunity because a procedural due process right against malicious prosecution was not clearly established at the time of the plaintiff's prosecution); *McCormack v. Livergood*, 353 F. Supp. 3d 357, 364 (M.D. Pa. 2018) (granting qualified immunity

to defendant with respect to plaintiff's malicious prosecution claim under the Fourteenth Amendment procedural due process clause).

Defendants acknowledge that this Court in *Crosland v. City of Philadelphia* held that this right was clearly established in 1984. 676 F. Supp, 3d 364, 379 (E.D. Pa. 2023). Most respectfully, this Court's ruling in *Crosland* is an outlier and numerous courts in the Third Circuit have concluded that the right is not clearly established. At a minimum, the split between the *Crosland* decision and other Third Circuit rulings illustrate that this right was not "clearly" established at the time of the investigation into Mr. Harris' death. This Court should therefore grant qualified immunity for Det. McNesby against Plaintiff's Fourteenth Amendment malicious prosecution claim.

**2. *Brady* Claims are Not Clearly Established.**

Similarly, to the extent Plaintiff is making a *Brady* claim, Det. McNesby is entitled to qualified immunity because, under the second prong of the qualified immunity analysis, there was no clearly established law "that required police officers to make *Brady* disclosures" at the time of Plaintiff's conviction. *Ogrod v. City of Philadelphia*, 598 F. Supp. 3d 253, 267 (E.D. Pa. 2022.) See *Gibson v. Superintendent of N.J. Dep't of Lab. & Pub. Safety*, 411 F.3d 427, 442-44 (3d Cir.); *Gilyard v. Dusak*, 2018 WL 2144183, at *4-5) (Holding that detectives' "obligations to turn over exculpatory evidence to prosecutors was not clearly established in 1997 and 1998). Therefore, if Plaintiff is raising a *Brady* claim against Det. McNesby, it should be dismissed as the requirements of police officers to disclose exculpatory evidence under *Brady* were not clearly established in the 1980s.

**B. Det. McNesby is Entitled to Qualified Immunity as to the *Brady* Claim Because Plaintiff Failed to Identify Facts Beyond Boilerplate That Suggest He Was Denied a Fair Trial.**

‘“The Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense.”’ *Smith v. Holtz*, 210 F.3d 186, 196 (3d Cit. 2020) (quoting *Kyles v. Whitley*, 514 U.S. 419, 438, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). “Rather, the prosecution’s failure to disclose evidence rises to the level of a due process violation ‘only if the government’s evidentiary suppression undermines confidence in the outcome of the trial.’” (*Id.*) (quoting *Kyles v. Whitley*, 514 U.S. 419, 438, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). “Thus, “[t]he question is not whether the defendant would more likely than not have received a different verdict with the [concealed] evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.”’ (*Id.*) (quoting *Kyles v. Whitley*, 514 U.S. 419, 438, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

Here, although Plaintiff claims that Det. McNesby deprived him of a “fair trial by concealing, suppressing and withholding relevant and material evidence” and “perjuring himself by omission,” he also concedes that some of this omitted evidence was ultimately presented at his bench trial and/or at the post-trial hearing conducted in front of the trial judge, and it did not change the outcome. ECF 13 at ¶ 134. For example, Plaintiff alleges that: (1) multiple witnesses testified to dispute evidence presented by the Commonwealth, and yet Plaintiff was still convicted beyond a reasonable doubt by a judge; (2) he had his post-trial motions denied after a hearing where additional testimony was heard, thereby upholding his conviction; (3) and despite the presentment of an alibi and additional witness testimony, he still was sentenced to life imprisonment by the criminal court. *Id.* at ¶¶ 49, 52-53, 56. Therefore, Plaintiff was not denied a fair trial, and Det. McNesby should be granted Qualified Immunity.

**C. Det. McNesby is Entitled to Qualified Immunity Because Probable Cause Existed.**

As a threshold matter, since Det. McNesby had probable cause to arrest Plaintiff, as discussed *supra*, he is entitled to qualified immunity against Plaintiff's malicious prosecution claims. Further, this probable cause determination is not affected by Det. McNesby's alleged omissions in the affidavit for probable cause. In *Goodwin v. Conway*, 836 F.3d 321, 326-27 (3d Cir. 2016), "a booking sheet" that was not included in the affidavit for probable cause but showed the plaintiff may have been incarcerated at the time of the crime was "insufficient to show the [Officer] Defendants submitted the warrant application with a reckless disregard for the 'truth.'" *Id.* at 328. Ultimately, the *Goodwin* court found that probable cause is "a complete defense" and "accordingly, would entitle Defendants to qualified immunity." *Id.* at 327.

Here, Plaintiff has not shown a lack of probable cause, but in turn merely alleges omissions from the affidavit. Plaintiff, however, has not shown that these omissions from the affidavit were made "with a reckless disregard for the truth" or that they would change the ultimate determination of probable cause. Since, Det. McNesby did have probable cause to arrest the Plaintiff, he is entitled to qualified immunity as having probable cause it is a "complete defense." *See Goodwin* at 327.

**III. Plaintiff's Claim of Deprivation of Liberty is Improperly Pled (Count II).**

Plaintiff's claim for deprivation of liberty is improperly pled because Plaintiff is using the Fourteenth Amendment when only the Fourth Amendment is proper. "If a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *DeLade v. Cargan*, 972 F.3d 207, 210 (3d Cir. 2020) (citing *United States v. Lanier*, 520 U.S. 259, 272 n. 7.). "Simply put, if … [Plaintiff's] claim of unlawful arrest and pretrial detention sounds in the Fourth Amendment, then it cannot be asserted under the Due Process Clause of the Fourteenth

Amendment." *Id.* This is what the court held in *DeLade* when they found that Plaintiff's "claim of unlawful arrest and pretrial detention is not cognizable under the Due Process Clause of the Fourteenth Amendment" and "falls under the Fourth Amendment." *Id.* at 213. Therefore, Plaintiff's allegation for deprivation of liberty under the Fourteenth Amendment is improperly pled and should be dismissed.

## IV. Plaintiff Fails to Sufficiently Plead a Plausible *Monell* Claim (Count III).

Plaintiff attempts to allege an unconstitutional practice or policy by the City of Philadelphia under several different theories. Specifically, Plaintiff alleges that the City had a policy, practice, or custom of: applying an unsound definition of probable cause in criminal investigations; using coercive and inducive techniques in interviews and interrogations to obtain evidence; fabricating inculpatory evidence and incriminating statements from witnesses, suspects, and arrestees by coercion, suggestion, inducement, and feeding details about the crime, including identifications and pertinent facts; withholding material and relevant evidence; and perjury by omission. ECF 13 at ¶ 138. Despite Plaintiff's broad-sweeping allegations, Plaintiff fails to state a plausible *Monell* claim.

As a general matter, the City of Philadelphia may not be held vicariously liable under the theory of *respondeat superior* for the alleged misconduct of its employees. *Monell v. Dep't of Soc.Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978). Rather, a plaintiff must show that the municipality was responsible for its own violations of the Constitution. *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990). To state a Section 1983 claim against a municipality, a plaintiff must establish that: "(1) a constitutionally protected right has been violated, and (2) the alleged violation resulted from a municipal policy, custom, or deliberate indifference." *Round v. City of Philadelphia*, No. 19-3513, 2020 WL 2098089, at *7 (E.D. Pa. May 1, 2020) (citing *Monell*, 436

U.S. at 694-95; *Andrews*, 895 F.2d 1480). When asserting a *Monell* claim under a policy or custom theory, a plaintiff's allegations must adequately "link the alleged offending policies or customs to anyone … who had policy-making authority." *Rees v. Office of Children and Youth*, 473 Fed. App'x 139, 143 (3d Cir. 2012). A policy is made "when a decisionmaker with final authority to establish municipal policy issues an official proclamation, policy, or edict." *Round*, 2020 WL 2098089, at *8 (citing *Wright v. City of Philadelphia*, 685 Fed. Appx. 142, 146 (3d Cir. 2017) (internal citations omitted)). However, to establish a custom, a plaintiff must establish a policymaker's "acquiescence in a longstanding practice or custom, which constitutes the 'standard operating procedure' of the local government entity." *Wright*, 695 Fed. Appx. at 146 (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702 (1989)). In his Amended Complaint, Plaintiff appears to be proceeding *only* under a practice or custom theory for his *Monell* claim.

### A. Plaintiff cannot establish a widespread practice or custom by the City based on temporally and substantively irrelevant examples of police misconduct.

Plaintiff has failed to sufficiently plead a pattern or practice of relevant misconduct within the Philadelphia Police Department during the 16-month investigation following the October 1984 death of Charles Harris. Specifically, the cases cited by Plaintiff in his Amended Complaint as proof of a widespread practice cannot be used to establish such a practice because the majority of the cases provided are too temporally remote. *See Freeman v. McGorry*, No. 20-cv-3354, 2022 WL 3030789, at *4 (E.D. Pa. Aug. 1, 2022) (finding that "many of the proffered examples of alleged misconduct submitted by Plaintiff were temporally remote" which "seriously undermines Plaintiff's ability to establish a similar pattern of misconduct which would place City policy makers on notice of the need to take action–to establish that City policy makers were deliberately indifferent to a known risk." (citing *Beck v. City of Pittsburgh*, 89 F.3d 966, 973 (3d Cir. 1996); *see also Watson v. Abington Twp.*, 478 F.3d 144, 156-57 (3d Cir. 2007) (finding that evidence of a

policy or custom predating the event in question by five years "raise[s] no inference of a policy or practice" by the police department); *Doe v. Allegheny Cty.*, No. 10-1761, 2013 WL 1290686, at *12 (W.D. Pa. Mar. 27, 2013) (finding that evidence of a 2004 incident was too remote in time from the 2010 allegations to support a custom or practice).

Plaintiff first attempts to support his *Monell* claim by alleging a pattern of incidents based, in part, on a newspaper investigation into Philadelphia homicide cases between 1974 and 1978 (ECF 13 at ¶¶ 85-91); however, these vaguely asserted incidents predate the Harris murder by six years. Other incidents provided by Plaintiff are without any dates and do not support an inference of a broader pattern of misconduct that City policy makers would have been aware of at the time of Plaintiff's prosecution that could have caused Plaintiff any constitutional injury. Additionally, many of the incidents Plaintiff purports to illustrate a pattern are not sufficiently similar in kind to the allegations of police misconduct he raises in his suit. For example, Plaintiff cites police practices dealing with the detention and search of African American men and Latino individuals that have little to no bearing on the investigation into the death of Charles Harris.

### B. Plaintiff's threadbare allegations that the City failed to train, supervise, and discipline officers for misconduct lacks any factual support.

Plaintiff alleges that the City and its policymakers had notice of practices, policies, and customs of unconstitutional misconduct, but failed to meaningfully investigate these charges and take appropriate action to curb these patterns. ECF 13 at ¶ 139. Plaintiff also alleges that the City failed to train, supervise, and discipline officers who engaged in misconduct. *Id.* ¶ at 141. However, Plaintiff fails to provide factual support of a deficient training program or any specific examples of failing to discipline officers for known misconduct.

"[A] municipality may be liable under Section 1983 when it decides 'not to train certain employees about their legal duty to avoid violating citizens' rights,' *Connick v. Thompson*, 563

U.S. 51, 61, 131 S.Ct. 1350, 179 L.E.2d 417 (2011), and this failure 'amount[s] to 'deliberate indifference' to the rights of persons with whom the [untrained employees] come into contact.' *id*." *Round*, 2020 WL 2098089, at *9 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197 (1989)). A plaintiff must allege a pattern of untrained employees committing similar misconduct to demonstrate deliberate indifference to sufficiently allege a municipality's failure to train. *Id*. (citing *Connick*, 563 U.S. at 62, 131 S.Ct. 1350). The following factors must be considered when determining whether the deliberate indifference standard is met: "(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Round*, 2020 WL 2098089, at *9-10 (citing *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (internal quotations omitted)).

Plaintiff summarily asserts that the City was deliberately indifferent to the need to train, supervise, and discipline its officers. *Id*. at ¶ 141. Seemingly as support for this allegation, Plaintiff asserts that Philadelphia Police Department's Internal Affairs Division failed to provide "an internal disciplinary mechanism that imposed meaningful disciplinary and remedial actions." *Id*. at ¶ 112. This single allegation is insufficient to allege the existence of a widespread failure by the City to train, supervise, or discipline its officers for misconduct. Plaintiff makes only the general claim that Philadelphia Police Department officers are untrained and/or unsupervised, but fails to accompany this bare allegation with supporting facts to show that the City does not train its officers as to how to conduct homicide investigations or fails to provide adequate supervision for officers conducting homicide investigations. *See Round*, 2020 WL 2098089, at *9 ("Conclusory and general claims that simply paraphrase Section 1983 will not satisfy federal pleading requirements

because they 'fail[] to satisfy the rigorous standards of culpability and causation required to state a claim for municipal liability.'") (quoting *Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014) (internal quotations omitted)). Without any factual basis to support Plaintiff's allegations that the City fails to train, supervise, or discipline its officers for misconduct, Plaintiff's *Monell* claim based on this theory cannot survive.

### C. Plaintiff failed to identify a final policymaker with knowledge of any alleged misconduct.

In the event the court finds that Plaintiff has sufficiently alleged a pattern of similar conduct showing alleged deficiencies in the City's training, supervision, and discipline of its officers, Plaintiff has not met the deliberate indifference standard because he failed to allege that a City policymaker had knowledge of these alleged issues before Det. McNesby allegedly violated Plaintiff's constitutional rights. *See Watson v. Abington Twp.*, 478 F.3d 144, 154 (3d Cir. 2007) (Noting that to state a claim under the custom theory, "proof of knowledge and acquiescence by [a] decisionmaker" is required); *see also Round*, 2020 WL 2098089, at *10 ("A plaintiff seeking to establish municipal liability under Section 1983 'must show that an official who has the power to make policy is responsible for either the affirmation of a policy or acquiescence in a well-settled custom.'") (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

Plaintiff alleges that the City's custom and usage of unconstitutional misconduct in homicide investigations in particular was known to the City and its policymakers as a result of newspaper investigations and a vacated conviction. ECF 13 at ¶¶ 85-99. However, Plaintiff fails to identify a final policymaker who was aware of a widespread practice of misconduct by Philadelphia police officers and acquiesced to it. As such, Plaintiff's *Monell* claim should be dismissed because he failed to identify a specific final policymaker who was responsible for his alleged constitutional violations. *See Round*, 2020 WL 2098089, at *10 (quoting *Andrews*, 895

F.2d at 1480) ("Absent identification of such a 'decisionmaker possess[ing] final authority to establish municipal policy,' a plaintiff cannot establish as a matter of law that a municipality should be subject to liability under Section 1983.").

### D. Plaintiff's allegations do not establish that a failure to train, supervise, or discipline officers caused his constitutional injury.

Plaintiff's failure to allege a sufficiently similar pattern of widespread misconduct as well as his failure to identify a policymaker who knew and acquiesced of alleged misconduct by officers dooms his *Monell* claims. However, even if the Court finds that Plaintiff met the deliberate indifference standard, Plaintiff must still show that "the failure to train *proximately caused* his constitutional injury by identifying a particular failure in a training program that is 'closely related to the ultimate injury.'" *Simpson v. Ferry*, 202 F. Supp. 3d 444, 456 (E.D. Pa. 2016) (quoting *Canton*, 489 U.S. at 391, 109 S.Ct. 1197) (emphasis added).

Plaintiff cannot establish a causal nexus between the City's alleged failure to train, supervise, and discipline, and Plaintiff's alleged injuries. "[P]roof of the mere existence of an unlawful policy or custom is not enough to maintain a § 1983 action. A plaintiff bears the additional burden of proving that the municipal practice was the proximate cause of the injuries suffered." *Bielevicz*, 915 F.2d at 850-51. To satisfy the causation element, plaintiff must demonstrate "a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." *Bielevicz*, 915 F.2d at 850 (citing *Estate of Bailey by Oare v. County of York*, 768 F.2d 503, 507 (3d Cir. 1985)).

The allegations relating to Plaintiff's *Monell* claim focus primarily on an alleged pattern, though tenuous, of police misconduct during homicide investigations during irrelevant time periods, but fails to identify any inadequate or deficient training programs that proximately caused the violation of Plaintiff's constitutional rights. Rather, Plaintiff rests his entire failure to train

claim on the sole allegation that the City fails to train its officers without any factual support detailing *how* the City's failure to train caused his conviction. The conclusory allegation that the City doesn't train, supervise, or discipline its officers is not enough to survive dismissal without more. *See Buoniconti*, 148 F. Supp. 3dat 441 (Liability attaches only if "the deficiency in training actually caused the [constitutional injury].")

Ultimately, Plaintiff fails to establish a pattern of similar misconduct that a City policymaker was aware of and ratified during Plaintiff's prosecution that caused his conviction. Moreover, Plaintiff's bare and conclusory allegations of the City's failure to train, supervise, and discipline its officers does not meet the pleading requirements set out in *Twombly*. Thus, Plaintiff's *Monell* claim must be dismissed.

**V. Plaintiff Fails to Sufficiently Plead His Conspiracy Claim (Count IV).**

In order to withstand a motion to dismiss on a claim of civil rights conspiracy, a plaintiff should "identify with particularity the conduct violating plaintiff's rights, the time and place of these actions, and the people responsible." *Rosembert v. Borough of East Lansdowne*, 14 F. Supp. 3d 631 (E.D. Pa. 2014) (citing *DeJohn v. Temple University*, 2006 WL 2623274, at *5 (E.D. Pa. Sept. 11, 2006). Specifically, a plaintiff must allege that there was an agreement or meeting of the minds to violate his constitutional rights. *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008). Courts have also highlighted that a claim for conspiracy must be pled with "sufficient specificity to survive a motion to dismiss" and that "specific allegations of an agreement to carry out the alleged chain of events is essential in stating a claim for conspiracy." *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997). Here, Plaintiff's conspiracy allegations are void of the kind of factual specificity necessary to survive dismissal. Thus, Plaintiff's conspiracy claim must be dismissed.

A case instructive on this issue is *Rosembert v. Borough of East Lansdowne*, 14 F. Supp. 3d 631 (E.D. Pa. 2014). In *Rosembert*, plaintiff alleged a civil rights conspiracy after defendant officers attempted a traffic stop on his motorcycle, and he fled from officers and ran into his home, which the officers then entered without a warrant. *Id*. at 631, 637. Once inside his home, plaintiff alleged officers assaulted him and used excessive force. *Id*. In granting defendant officers' motion to dismiss the conspiracy count, the court held that plaintiff merely asserted that defendants had knowledge that [other departmental] "police officers would unlawfully agree to act in concert with and conspire with fellow police officers *like*…" the officer defendants listed in the suit. *Id*. The court found that "these allegations do not provide sufficient facts to allows this court to plausibly determine that these specific defendants formally agreed to violate this plaintiff's constitutional rights." *Id*.

Here, as in *Rosembert*, Plaintiff does not assert with any particularity how Det. McNesby conspired with any specific person to violate his rights. Instead, Plaintiff provides only vague, boilerplate allegations that, "Defendant McNesby and other City of Philadelphia employees, acting within the scope of their employment and under the color of state law, agreed among themselves and with other individuals, to act in concert" to deprive Plaintiff of various constitutional rights, which he enumerates. ECF 13 at ¶ 144. Plaintiff does not identify any officer or City employee, by name or any other means, who allegedly acted in concert with Det. McNesby to commit any violation. While Plaintiff does label some of his previously plead allegations as "overt acts" that were "in furtherance of the conspiracy," he does not provide facts to allow this Court "to plausibly determine that . . . *specific defendants* formally agreed to violate the plaintiff's constitutional rights." *Rosembert*, 14 F. Supp. 3d 631 at 648 (emphasis added). As the court found in Rosembert, such "[a] lack of agreement is fatal to the conspiracy claims under sections 1983." *Id*. Because

Plaintiff does not allege with specificity and particularity the existence of any agreement to deprive him of his constitutional rights between named officers, Plaintiff's conspiracy claim must be dismissed.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' motion to dismiss Plaintiff's Amended Complaint (ECF 13) and dismiss all of Plaintiff's claims with prejudice.

Dated: July 24, 2024

Respectfully submitted,

*/s/ Perry Wasserman*
Shneur Z. Nathan
Avi T. Kamionski
Perry Wasserman
Jami Galbraith
Nathan & Kamionski LLP
575 South Charles Street, Suite 402
Baltimore, Maryland 21201
(410) 846-0061
pwasserman@nklawllp.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I, PERRY WASSERMAN, an attorney, do hereby certify that a true and correct copy of the foregoing document was electronically filed with the Court this date and is available for viewing and downloading from the ECF system. All counsel of record was served via electronic notification.

Dated: July 24, 2024

Respectfully submitted,

*/s/ Perry Wasserman*

Shneur Z. Nathan
Avi T. Kamionski
Perry Wasserman
Jami Galbraith
Nathan & Kamionski LLP
575 South Charles Street, Suite 402
Baltimore, Maryland 21201
(410) 846-0061
pwasserman@nklawllp.com

*Attorneys for Defendants*